USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/7/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MING HOM, *individually and on behalf of all others
similarly situated*,                                     :
                                                         :
                                                         :
                                            Plaintiff,   :
                                                         :
                    -against-                            :
                                                         :
VALE, S.A., MURILO PINTO DE OLIVEIRA               :
FERREIRA, and LUCIANO SIANI PIRES,                 :
                                                         :
                                          Defendants.   :
-------------------------------------------------------------------X


-------------------------------------------------------------------X
VALLI T. CHIN, *individually and on behalf of all others*  :
*similarly situated*,                                    :
                                                         :
                                            Plaintiff,   :
                                                         :
                    -against-                            :
                                                         :
VALE S.A., MURILO PINTO DE OLIVEIRA               :
FERREIRA, LUCIANO SIANI PIRES, and                :
PETER POPPINGA                                     :
                                                         :
                                          Defendants.   :
-------------------------------------------------------------------X

1:15-cv-9539-GHW
1:16-cv-658-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

## I.        INTRODUCTION

Pending before the Court are two motions to consolidate two putative class actions brought

under the federal securities laws by securityholders of Vale S.A, and to appoint a lead plaintiff under

the procedures set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA").  For the

reasons outlined below, the Court GRANTS the motion filed by the Alameda County Employees'

Retirement Association ("ACERA") and the Orange County Employees Retirement System

("OCERS") seeking to consolidate the two actions and appointment as lead plaintiff.

## II.   BACKGROUND

On December 7, 2015, a complaint was filed on behalf of a putative class of Vale's securityholders, against the company, its Chief Executive Officer, Murilo Pinto de Oliveira Ferreira, and its Chief Financial Officer, Luciano Siani Pires. *Ming Hom v. Vale, S.A., et al.*, 1:15-cv-9539, Dkt. No. 1. Vale, a Brazilian corporation that is a large producer of iron ore, is publicly traded on the New York Stock Exchange. *Hom* Compl. ¶¶ 7, 20. Vale is also the joint owner of a company that owns and operates the Fundão Dam in Brazil. *Id.* ¶ 16. On November 5, 2015, the Fundão Dam burst, contaminating a major river in the area with toxic waste, killing several people, and displacing hundreds of others. *Id.* ¶¶ 17–18.

The complaint alleges that defendants made false and misleading statements or omissions in United States Securities and Exchange Commission ("SEC") filings and in public statements, regarding Vale's use of the dam for disposing mining waste, safety measures at the dam, and the extent of damage caused by the accident. *Id.* ¶ 23. The complaint brings claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; on behalf of a putative class of "all persons . . . who purchased Vale securities between March 21, 2015 and November 30, 2015." *Id.* ¶ 1; *see id.* ¶ 35. Pursuant to the requirements set forth in the PSLRA, notice of the *Hom* action was published on the same day that the complaint was filed. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i);[1] *Hom* Dkt. No. 33-4. The notice, published in *Business Wire*, alerted members of the putative class that the deadline to seek appointment as lead plaintiff was February 5, 2016, pursuant to the relevant provisions of the PSLRA. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II); *Hom* Dkt. No. 33-4.

---

[1] The PSLRA requires that a plaintiff provide notice "in a widely circulated national business-oriented publication or wire service" no later than twenty days after the complaint is filed. 15 U.S.C. § 78u–4(a)(3)(A)(i).

On January 28, 2016, a complaint raising similar allegations was filed on behalf of a putative class of Vale's securityholders. *Valli T. Chin v. Vale S.A., et al.*, 1:16-cv-658, Dkt. No. 1. The *Chin* complaint includes a more expansive class period—November 7, 2013 through November 30, 2015—and also names as a defendant Peter Poppinga, an Executive Director at Vale. Although the PSLRA requires that notice be published in *only* the first filed action where more than one action is filed "on behalf of a class asserting substantially the same claim or claims," *see* 15 U.S.C. § 78u–4(a)(3)(A)(ii), notice of the *Chin* action was nevertheless published in *PRNewswire* on February 1, 2016. *See Hom* Dkt. No. 33-5.

On February 5, 2016, five sets of putative class members filed motions seeking to consolidate the two actions and appointment as lead counsel. *See Hom* Dkt. Nos. 15, 18, 21, 24, 25. Three of the moving parties have since withdrawn their motions or indicated that they do not oppose motions filed by other parties with larger financial interests at stake in the litigation. *See* Dkt. Nos. 36, 42, 43, 46, 50. Thus, only ACERA/OCERS and TCAP Real Estate Inc. ("TCAP") remain in the running for appointment as lead plaintiff. ACERA/OCERS estimate that they incurred over $15 million in losses from Vale securities purchased during the longer class period alleged in *Chin*, whereas TCAP estimates that it incurred $682,050 losses for that same class period. The motions were fully briefed as of February 22, 2016.

### III.   ANALYSIS

#### A. Consolidation

All moving parties seek consolidation of the two actions, and the Court has received no objection to the requests for consolidation.

A district court may consolidate two or more actions under Federal Rule of Civil Procedure 42(a) when the actions involve "a common question of law or fact." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (quoting Fed. R. Civ. P. 42(a)). Consolidation is "a valuable

and important tool of judicial administration," that should be "invoked to expedite trial and eliminate unnecessary repetition and confusion[.]" *Id.* (internal quotation marks and citations omitted). The Court "has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

"Under Rule 42 and the [PSLRA], actions need not be 'identical' to allow for consolidation." *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-cv-8925 (KMW), 2015 WL 1311073, at *2 (S.D.N.Y. Mar. 23, 2015) (citing *Pinkowitz v. Elan Corp., PLC*, No. 02-cv-4948 (WK), 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002). Indeed, "consolidation is not barred simply because the actions to be consolidated allege claims against different parties," nor does a disagreement "on the precise confines of the relevant class period" preclude consolidation. *Pinkowitz*, 2002 WL 1822118, at *3 (internal quotation marks and citations omitted). Rather, "[c]ourts have looked to the particular facts of cases to determine if the anticipated benefits of consolidated actions, such as considerations of judicial economy and unnecessary costs to the parties, 'outweigh potential prejudice to the parties.'" *Woburn*, 2015 WL 1311073, at *2 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)).

The Court finds that consolidation is appropriate. The *Hom* and *Chin* complaints raise similar allegations regarding misrepresentations or omissions in statements concerning the Fundão Dam, and bring the same causes of action against nearly the same defendants. Although there are minor differences in the allegations and the putative class periods, the cases nevertheless present common questions of law and fact. Because considerations of judicial economy and convenience weigh in favor of consolidation, and there is little risk of potential prejudice, the motion to consolidate is GRANTED.

The actions are consolidated under the caption *In re: Vale S.A. Securities Litigation*, 1:15-cv-9539-GHW. All filings and submissions shall be made under the docket number 1:15-cv-9539-GHW only.

### B. Appointment as Lead Plaintiff

#### 1. *Legal Standard*

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA creates a "[r]ebuttable presumption" that "the most adequate plaintiff . . . is the person or group of persons" that: (1) "has either filed the complaint or made a motion in response to a notice;" (2) "has the largest financial interest in the relief sought by the class;" and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc). The presumption "may be rebutted only upon proof" that "the presumptively most adequate plaintiff: [1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

#### 2. *Timeliness*

The PSLRA provides that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* § 78u–4(a)(3)(A)(i)(II). Here, notice of the *Hom* action was published on December 7, 2015. *Hom* Dkt. No. 33-4. All class members seeking appointment as lead plaintiff

filed timely motions on February 5, 2016, and thus both ACERA/OCERS and TCAP satisfy the first requirement set forth in the PSLRA.

### 3. Largest Financial Interest

#### a. Legal Standard

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has provided instruction on the appropriate method." *Elstein v. Net1 UEPS Techs., Inc.*, No. 13-cv-9100 (ER), 2014 WL 3687277, at *6 (S.D.N.Y. July 23, 2014). That said, courts in this circuit analyze four factors—the "*Lax* factors"—to make this determination: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re CMED Sec. Litig.*, No. 11-cv-9297 (KBF), 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997). Courts considering these factors generally "place the most emphasis on the last of the four factors: the approximate losses suffered by the movant above any weight accorded to net shares purchased and net expenditures." *Id.* (internal quotation marks and citation omitted).

To calculate approximate losses, courts "typically employ one of two methodologies: First–In–First–Out ('FIFO') or Last–In–First–Out ('LIFO')." *Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203 PAE, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). "Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold." *Id.* Courts in this district have stated "a very strong preference for the LIFO method in calculating loss." *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011). "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due the inflation of the

stock price. FIFO may exaggerate losses." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) (ellipses omitted) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005)). Thus, the Court will utilize the LIFO method for calculating loss.

### b. Relevant Class Period

As an initial matter, ACERA/OCERS and TCAP disagree as to which class period the Court should utilize in determining the party with the largest financial interest. ACERA/OCERS assert that the longer class period alleged in *Chin*—November 7, 2013 through November 30, 2015—should be considered because that time period is more inclusive and, therefore, encompasses greater potential damages to potential class members. TCAP, on the other hand, maintains that the shorter class period alleged in *Hom*—March 21, 2015 through November 30, 2015—should be considered because that is the class period for which early notice was provided through publication. Although TCAP contends that the two actions rely upon "the same or substantially similar facts that occurred during similar time periods" in asserting that consolidation of the actions is appropriate, *see* TCAP Mem. of Law at 4, Dkt. No. 27, it nevertheless argues that the longer class period asserted in *Chin* "dramatically expand[s] the class period," *see* TCAP Mem. of Law in Further Supp. at 7, Dkt. No. 37—such that the published notice did not provide class members with adequate information in considering appointment as lead counsel. Alternatively, TCAP argues that the Court should require republication of notice with the longer class period so that all class members have an additional sixty days to seek appointment as lead plaintiff.

First, the Court finds that republication of notice is not required under the PSLRA. The plain text of the statute provides that, where a subsequent action asserts "substantially the same claim or claims . . . only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published." 15 U.S.C. § 78u–4(a)(3)(A)(ii). Based on this statutory text, courts typically

7

"disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action." *Turner v. ShengdaTech, Inc.*, No. 11-cv-1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011).  Instead, courts generally require republication of notice only "where the amended complaint substantially alters the claims or class members." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (quoting *Waldman v. Wachovia Corp.*, No. 08-cv-2913(SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009)).

Although TCAP cites *Kaplan* for support, the differences between that case and the present case are noteworthy.  There, the court found that republication was required because the first-filed complaint included an original class period of only nine days, which was expanded by more than two years in an amended complaint.  *Id.* at 367.  "[M]ore significantly" than the larger class period, moreover, was the fact that the subsequent complain "assert[ed] new claims."  *Id.*  In contrast, the expanded class period alleged in *Chin* is significantly more modest, and more importantly, the two actions bring the same legal causes of action, against nearly identical defendants, and allege substantially similar allegations.  The *Hom* and *Chin* actions are substantially similar, such that the December 7, 2015 notice satisfied the requirements of the PSLRA and adequately notified potential lead plaintiffs of the nature of the claims against Vale.

Moreover, the Court finds that the use of the longer, more inclusive class period is proper for purposes of the present motion because the longer class period encompasses more potential class members and damages.  A number of courts in this district have found it appropriate to rely on the more inclusive class for determining lead plaintiff because "it encompasses more potential class members."  *See, e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2006); *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015) (utilizing more expansive class period of June 30, 2010 through March 17, 2015, rather than class period of March 4, 2014 through March 17, 2015 alleged in first-filed

complaint); *In re Elan Corp. Sec. Litig.*, No. 08-cv-08761 (AKH), 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (because claims asserted in longer class period were not implausible, "it is appropriate to use that more inclusive period" for determining lead plaintiff); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113–14 (E.D.N.Y. 2012) (utilizing longer class period of July 31, 2008 through October 4, 2011, rather than class period of July 31, 2008 through July 20, 2010 alleged in first-filed complaint); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("[Nothing in the PSLRA limits the class period to the period identified in the first notice."). Thus, the Court will utilize the more inclusive class period for purposes of appointing a lead plaintiff.

### c. *Common Stock and Preferred Stock*

As another preliminary matter, the parties disagree as to whether the Court should consider losses in Vale preferred stock American Depository Receipts ("ADRs"), or limit its consideration to losses in Vale common stock ADRs. TCAP purchased only common stock ADRs during the class period, whereas ACERA/OCERS purchased both common stock and preferred stock ADRs. TCAP argues that because the *Hom* complaint was brought on behalf of a putative class of purchasers of Vale common stock ADRs only, the Court's analysis should necessarily be limited to losses in common stock ADRs.

TCAP's argument fails for several reasons. First, it is not at all clear that the scope of the putative class alleged in *Hom* was limited to common stock ADRs. Rather, the complaint purported to bring claims on behalf of a class of "all persons . . . who purchased Vale *securities* between March 21, 2015 and November 30, 2015." *Hom* Compl. ¶ 1 (emphasis added); *see also id.* ¶ 35. The term "security," as defined in federal securities laws, is "sufficient 'to encompass virtually any instrument that might be sold as an investment.'" *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990)).

9

In any event, the *Chin* complaint expressly included allegations regarding losses in Vale preferred ADRs, and TCAP offers no compelling basis for excluding losses in those securities. TCAP does not, for example, argue that the interests of purchasers of Vale preferred stock ADRs are not aligned with the interests of purchasers of Vale common stock ADRs. *See Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-10400, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008) (noting that courts "often appoint [as lead plaintiff] purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned" and collecting cases). Indeed—other than the fact that considering losses in preferred stock ADRs diminishes the likelihood of TCAP's appointment as lead counsel—TCAP has not provided any persuasive reason for limiting the lead-plaintiff analysis to losses in Vale common stock ADRs.

In enacting the PSLRA, Congress sought to curb abuses such as "the race to the courthouse to be the first to file the complaint." S. REP. 104-98, at 10 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 689. Instead, "Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998) (quoting H.R. CONF. REP. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731). Limiting consideration to the losses suffered in common stock ADRs would run counter to Congress's stated goals, in that it would both: (a) encourage a race to the courthouse to be the first to file a complaint, and thereby dictate the scope of the losses considered for appointment as lead plaintiff; and (b) exclude from consideration significant losses from parties whose interests are otherwise strongly aligned with the putative class of securityholders. Thus, the Court considers the parties' broader losses alleged with respect to both common stock and preferred stock ADRs.

### d. Application

There is no dispute that ACERA/OCERS have a larger financial interest than TCAP, when considering the longer class period alleged in *Chin* and the alleged losses in Vale preferred stock ADRs. *See* TCAP Reply Mem. of Law at 2, Dkt. No. 47. Indeed, the $15,297,748 in LIFO losses alleged by ACERA/OCERS dwarfs the $682,050 in LIFO losses alleged by TCAP.[2] Turning to the remaining factors articulated in *Lax*, ACERA/OCERS purchased 4,851,100 shares during the class period, whereas TCAP purchased 200,000 shares. Next, ACERA/OCERS purchased 3,067,600 net shares during the class period, whereas TCAP purchased 200,000 net shares. Finally, ACERA/OCERS expended $22,243,849 in net funds during the class period, whereas TCAP expended $1,220,381 in net funds. Thus, the *Lax* factors weigh in favor of ACERA/OCERS, and the Court concludes that they have the greater financial interest in the relief sought by the putative class.

### 4. Rule 23 Requirements

"Once the court 'identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.'" *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (quoting *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004)). Rule 23(a) of the Federal Rules of Civil Procedure provides that a party may serve as a class representative only if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

---

[2] TCAP argues that ACERA/OCERS overstate their losses by virtue of their status as in-and-out traders. For purposes of the present motion, it is sufficient to find that, under any analysis, the financial interest of ACERA/OCERS exceeds that of TCAP. TCAP has not suggested otherwise.

23(a). At this stage of the litigation, however, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008). ACERA/OCERS have made the requisite preliminary showing of adequacy and typicality under Rule 23.

"The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011)). "A lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11-cv-5097 (JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (internal quotation marks and citation omitted). ACERA/OCERS and other putative class members allege that they purchased Vale shares at artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws. Thus, the typicality requirement is satisfied.

In order to satisfy the adequacy requirement, a potential lead plaintiff must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley*, 272 F.R.D. at 131. ACERA/OCERS have retained Bernstein Litowitz Berger & Grossmann LLP as lead counsel. As discussed below, Bernstein Litowitz is qualified to serve as lead counsel and conduct the litigation. Moreover, there has been no evidence presented that ACERA/OCERS have interests adverse to those of the putative class members or any other conflict. Finally, ACERA/OCERS have a significant financial interest in the outcome of the case, suggesting that they will advocate vigorously on behalf of the class. Thus, the adequacy requirement is also satisfied.

### 5. Rebuttal Evidence

TCAP has failed to present any proof that ACERA/OCERS either "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Because the Court finds that ACERA/OCERS are the presumptively most adequate plaintiffs, and no member of the class has presented proof to rebut the presumption, the Court appoints ACERA/OCERS as lead plaintiffs.

### 6. Co-Lead Plaintiffs

In a last-ditch effort, TCAP argues in its reply brief that the Court should appoint both TCAP and ACERA/OCERS as co-lead plaintiffs:  TCAP as co-lead plaintiff for a class of investors who purchased Vale common stock ADRs, and ACERA/OCERS as co-lead plaintiff for a class of investors who purchased Vale preferred stock ADRs.  TCAP asserts that such a lead-plaintiff structure is warranted because, although it concedes that ACERA/OCERS have significant losses in preferred stock ADRs, it maintains that ACERA/OCERS cannot prove loss causation with respect to their alleged losses in common stock ADRs because of their status as in-and-out traders.[3]

Even if the Court accepts TCAP's argument regarding loss causation—an issue on which the Court expressly takes no position for purposes of the present motion—the Court nevertheless

---

[3] Under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), a plaintiff's trading losses incurred prior to any corrective disclosure "are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements." *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, No. 13-cv-6016 (PKC), 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (citing *Dura*, 544 U.S. at 342–43).  Nevertheless, "[l]oss causation 'does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.'" *In re Gen. Elec. Sec. Litig.*, No. 09-cv-1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009) (quoting *Montoya v. Mamma.com Inc.,* No. 05-cv-2313(HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005)).  ACERA/OCERS argue that the *Chin* complaint alleges several partial disclosures, and on that basis allege a significant amount of losses in both Vale common stock and preferred stock ADRs prior to the full corrective disclosure alleged in the *Chin* and *Hom* complaints.  The Court need not resolve whether the *Chin* complaint plausibly alleges any partial disclosures for purposes of the present motion.

declines to appoint TCAP as co-lead plaintiff. Importantly, "nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003). As the court in *In re Global Crossing* further explained:

> [T]he imposition of any such requirement would be at odds with the purposes of the statute, since in the case of large alleged frauds involving issuers of many classes of securities, the consequence would be either the appointment of a large number of lead plaintiffs (undermining the goal of a cohesive leadership and management group) or the premature breakdown of the action into an unmanageable number of separate cases brought by different lead plaintiffs on behalf of each potential subclass of securities holders.

*Id.* at 204–05; *see also Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 189–90 (S.D.N.Y. 2006) ("[R]ather than better serving the interests of individual class members, the appointment of a co-Lead Plaintiff would only serve to fracture the leadership and drive up attorney[']s fees.").

TCAP fails to articulate any benefit to the putative class members in having it serve as co-lead plaintiff. Accordingly, the Court finds that the risk of fractured leadership and likely additional attorney's fees that would result from appointing a co-lead plaintiff outweigh any hypothetical advantage to the class members that would result from such an appointment, at least at this stage of the litigation.

### B.  Appointment of Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, the statute evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 417

14

(S.D.N.Y. 2014) (quoting *Casper v. Song Jinan*, No. 12-cv-4202 (NRB), 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012)).

ACERA/OCERS have selected Bernstein Litowitz Berger & Grossmann LLP to serve as lead counsel.  In support of the request, Blair A. Nicholas, a partner at Bernstein Litowitz, submitted a detailed firm resume and biography.  Dkt. No. 33-6.  Having reviewed the firm resume, the Court finds that Bernstein Litowitz is qualified to serve as lead counsel.  Accordingly, the motion seeking approval of Bernstein Litowitz as lead counsel is GRANTED.

## II.    CONCLUSION

For the reasons outlined above, the Court GRANTS the motion to consolidate the actions *Ming Hom v. Vale, S.A., et al.*, 1:15-cv-9539 and *Valli T. Chin v. Vale S.A., et al.*, 1:16-cv-658.  All future filings shall be captioned *In re: Vale S.A. Securities Litigation*, 1:15-cv-9539-GHW, and filed under that docket number only.  The motion of ACERA/OCERS seeking appointment as lead plaintiffs is GRANTED, and their selection of Bernstein Litowitz as lead counsel is approved.

The parties are directed to submit a joint letter no later than March 14, 2016, proposing a schedule for the filing of an amended complaint, defendants' answer or response to the complaint, and an initial pretrial conference.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 18, 21, 24, 25, 31 in No. 1:15-cv-9539.

SO ORDERED.

Dated:  March 7, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge

15